Case 16-4332, Matt Lawson v. Michael Huerta. Oral argument not to exceed 15 minutes per side. Mr. Hahn for the petitioner. Good morning. May it please the Court. My name is Derek Hahn. I represent Matt Lawson, the appellant in this case, and would like to reserve five minutes for rebuttal. The facts of this case go back to the 2011-2012 time frame, where my client, Mr. Lawson, undertook a project to perform several major repairs and alterations to a customer's Cessna 172 aircraft. One of the alterations he was going to undertake was a change to the engine and propeller, and install a higher horsepower engine, and install a constant speed propeller, as opposed to the original equipment, which had a fixed pitch propeller, which is essentially a piece of aluminum twisted to provide thrust. A constant speed propeller has two blades installed into a hub that are adjustable in flight to provide more efficiency and power in flight. This was the nature of the modification, and it's kind of where the heart of this dispute arises. In the course of doing this modification, he has to obtain FAA approval, and that can be obtained several ways. Mr. Lawson had actually done this exact modification in the past, and he had used what's called an STC, a supplemental type certificate. This is in the form of a patent of sorts, where someone else has gone to the trouble of doing research and getting this modification certified, and the FAA signs off on it and issues an STC. Mr. Lawson had done this exact modification using an STC in the past. However, the STC was not available when he wanted to undertake this particular modification, and if the STC isn't available, then you can't use it. So Mr. Lawson opted for an alternate method of performing this modification, which was essentially called a field approval. Under a field approval, the mechanic will get with his inspector from the FAA office and provide information to that inspector as to why this modification can be done. One of the things that he can provide is evidence that it has been done in the past and, in fact, approved in the past. In this case, Mr. Lawson provided evidence to his FAA inspector that he had done it in the past and provided documentation on those prior modifications. He also provided information that Cessna itself had come up with a configuration identical to this, with the same engine and a constant speed propeller, in a production aircraft. So that also is information the inspector... And there were several used, actually, and the engine, the IO means it's an injected engine and opposed cylinders. 360 is the cubic inch displacement, and then the last number is a series number, ABCD, and that just denotes various minor modifications. It could be a fuel system difference, a prop governor difference, or something minor, but the essential engine is the same. And Cessna had installed this engine and propeller configuration in production aircraft. So that also was something that Mr. Lawson... Are you saying that your client got prior approval from the FAA for the modification, or is the problem here that your client is being accused of making misrepresentations to get the approval? The dispute arises on what the approval consisted of that he received back from the FAA. And the reason it's important what he submitted, because the STC was not available, so he had to go an alternate route. And when he gets the approval back from the FAA, his understanding is that it has been approved under a field approval based on the data he supplied. Part of the data being the STC that was no longer available, but when the FAA... When a different inspector looks at this case and starts investigating it and writing it up as a violation, he's under the mindset that Mr. Lawson had the STC and installed this modification in strict conformity with the STC, when that was never the intent and was never discussed between... In your brief, you even say, look, the guy he was working with put in this language and he basically just signed it, or something to that effect. But I thought it was pretty clear, maybe even undisputed, although I guess he testified differently about the type of engine, but that it was promised one engine and a different one showed up. It was promised a 78-inch prop and an 80-inch showed up. If that's in the documentation, he signs the documentation and this is what I put in, and a later inspector looks at it, that seems like he doesn't need a STC or anything else. It's contrary to what's in the documentation. Well, with regard to the engine issue, I'll take that up first. The engine that Mr. Lawson built up for this modification was a G engine. But that particular G engine had a cracked engine case. The case is essentially the same as a block in a car, but it comes in two halves and you bolt it together. The case is actually the component that has the data tag that is attached to the case that denotes what the model and so forth on the engine is. The case was cracked, so Mr. Lawson had to get a substitute case. The case he got was from an engine that had also been a G, but had been converted to a K through some minor modification. He testified to this and the ALJ specifically said he was less than credible on this issue. I think page 224 he says, he testified to it, I don't believe it. The FAA inspector admitted he did nothing to determine what engine was in this aircraft. He looked at no components of the engine. He looked at no parts manuals. He did absolutely zero to determine what the engine actually was. He looked at one thing and that was the data tag. The only evidence before the court was that the data tag was wrong. The board got that right. The board said this is a case of an incorrect data tag. That was right in their opinion. They got it right. They saw what happened. That's not falsification. That's failure to change a data tag back. That's defective maintenance. He didn't put in a 78 inch prop, correct? He put in an 80 inch. At the time the aircraft was released it had a 76 inch prop which is the stock propeller. The 80 inch was put in later, not on this entry that they claim is falsified. It was put in later when the aircraft had been moved to a facility where the float provisions were to be installed. That's where the 80 inch propeller was installed. That propeller is approved for that aircraft in a seaplane configuration. You do not need any approval to do that. The only approval in the STC or the field approval that was being sought was a change from a fixed pitch to a constant speed. It could be any diameter approved. It could be anywhere from 76, 78 or 80. The constant speed propeller modification was what the STC and the field approval applied to. He installed the 80 inch later on, not at the time it was returned to service. The whole dispute comes down to Mr. Lawson agreeing with Inspector Moore that this is the modification that's going to be done and there's no STC available. Mr. Moore knew that. Mr. Lawson knew it. They talked about it. Moore prepares the paperwork, which wasn't even proper under FAA protocols for Inspector Moore to do the paperwork. He gives it back to Lawson. Mr. Lawson looks at it and says, okay, if this is what he wants me to use, I'll sign off on it. It wasn't his choice, but he's thinking he's being told by his supervisor, in essence, this is what I want you to do. He signs off on it. It's not falsification when it's a document that the FAA authored. All the falsification cases that are out there that I've read involve an airman doing something that the FAA knows nothing about and the FAA learns about it later. This is a situation where the FAA is actively involved in the drafting process and knows exactly what Mr. Lawson is going to do. But ironically, Inspector Moore and Inspector Steffes that persecuted the case never talked to each other. Inspector Steffes never goes to Inspector Moore and says, what were you thinking when you signed off on this field approval? So Inspector Steffes is pursuing this entire case as if Mr. Lawson had the STC and did everything in strict conformity with the STC when that was never intended. Was a written approval provided to your client for the 8-inch propeller? It is in the form of the type certificate data sheets for that aircraft, yes. And I've referenced that. Data sheet. I mean, was then approval separately disseminated from the agency saying that your client could install this 8-inch propeller? The 8-inch propeller was already approved by existing FAA documentation. It's on page 5 of the type certificate data sheet that I've referenced. So the only time you need to get any other approval... What documentation are you referring to? I don't know what documentation you're talking about. You said the data sheet. What data sheet are you talking about? It's called a type certificate data sheet. It's in the attachments. Does it pertain specifically to the approval for that particular aircraft and for your client to install the 8-inch propeller? Yes, Your Honor. It's listed on page 5. It says the model 172E, near sea plane configuration, diameter not to exceed 80 inches. And it's right in the attachments I have. So Mr. Lawson didn't need any other approval since Cessna and the FAA had already approved that an 8-inch propeller was acceptable for a sea plane configuration. The only issue with regard to the STC and the field approval was the constant speed variety of the propeller, not the diameter. And it was never discussed with Inspector Moore and Mr. Lawson. May it please the Court, my name is Jessica Cabas Gomez and I represent the Federal Aviation Administration. The central issue in this case is whether revocation of Mr. Lawson's mechanic certificate and his inspection authorization is warranted where the Board found credible and substantial evidence of numerous instances of intentional false information. As general backgrounds, the records that Mr. Lawson falsified are Form 337s. These are very important forms from the FAA. They're required to be completed by mechanics that are performing any major alterations or repairs. What about his argument that he was constantly consulting inspectors, getting these approved, that the other forms approved these things, and that he argues the Board itself, for example, with regards to the engine, found in his favor ultimately? That the G-tag versus K-tag, that he didn't change the tag and had nothing to do with the engine? Your Honor, Mr. Lawson's representation on that point is incorrect. The Board found in favor of the FAA that, in fact, a K-model engine was installed in the aircraft. It found Mr. Lawson's claim that he simply forgot to change the placard on the engine data plate less than credible, as Your Honor noted. And the Board deferred to the ALJ's credibility determination on this point, which the ALJ relied on Mr. Lawson's own testimony and Inspector Steffi's testimony. Inspector Steffi's testified that during the investigation interview with Mr. Lawson, he himself admitted that he had installed a K-model engine, that he believed both engines were the same. The only difference being that he thought the oil capacity was different, and that he simply had to remark the oil dipstick. Your Honor, this is in the transcript at the Joint Appendix on pages 90-91 and 122-23. Your Honor, there are significant differences, despite Mr. Lawson's representation in this case, between a K-model and a G-model engine. Those engines have different horsepower ratings, they have different operating ranges, and as Mr. Lawson himself noted, they also have different oil capacities. This Court defers to the fact finder's credibility determinations unless they're arbitrary and capricious, and in this case the Board affirmed the ALJ's credibility determinations on that point. The fact that Mr. Lawson claims he didn't draft the form is his attempt to deflect responsibility in this case. Over the course of four months, Mr. Lawson worked with Inspector Moore, one inspector, back and forth. There are draft Form 337s in the record, in the Joint Appendix. They indicate that Mr. Lawson's original submission to the FAA requested approval for the installation of a K-model engine. However, as Mr. Lawson testified, and as is noted in that draft Form 337, Mr. Lawson crossed out during a phone call with Mr. Moore, indicating that he did not have approval for the K and that he was to install a G-model engine. That's noted in the Joint Appendix in his own draft Form 337 in Mr. Lawson's own handwriting. Additionally, Your Honor, there's no approval from the FAA for the installation of an 80-inch propeller in this aircraft. What about the fact that Cessna approves it and that he had submitted those docs? Your Honor, Mr. Lawson submitted, as part of the datal approval for the Form 337-1, dealing with the engine in this case, the engine installation instructions XP10138811. Those installation instructions, they reference in the approved model list that's on the back of that STC. They reference exactly which installation instruction is applicable. The one I just referenced is the applicable installation instruction. On page 267 of the Joint Appendix, in that installation instruction, it specifically calls out that for the Macaulay constant-speed propeller engine, it is not to be a diameter of over 76 inches. Mr. Lawson recognized this. That is why he was asking for field approval. That Form 337 approved a deviation from that 76-inch propeller to a 78-inch propeller. That's the intended purpose of Block 3 of a Form 337. That's where the FAA provides their approval for a deviation from any approved data like that STC. Do you have any understanding as to what your opposing counsel is talking about when he keeps claiming that the 80-inch propeller was approved in the data entries? Yes, Your Honor. I believe what Mr. Lawson is referencing is that he had intended all along to convert this aircraft from a land plane to a sea plane. He contends that in documents which I have not seen, that a sea plane version can have an 80-inch propeller. However, Mr. Lawson himself testified that he returned this aircraft to service as a land plane, not as a sea plane. He also testified and admits he installed the 76-inch propeller to test fly the aircraft, then swapped in the 80-inch propeller and warned the aircraft owner not to fly the aircraft. Your Honor, this goes to Mr. Lawson's approval of the airworthiness certificate of this aircraft. Mr. Lawson, in his annual inspection certification, signed off that this aircraft was airworthy when he in fact warned the owner himself not to fly the aircraft. He warned the owner not to operate this aircraft with that 80-inch propeller and was unwilling to test fly the aircraft in that 80-inch propeller. Your Honor, Mr. Lawson also falsified the lower firewall installation entry. He indicated that he installed that lower firewall in accordance with Cessna's manual. Now, Cessna's manual requires stainless steel rivets, and that's extremely important because those are fireproof. That's necessary in case there's an engine fire. It protects the occupants of that aircraft from the fire reaching them. Mr. Lawson, however, used aluminum rivets, which are not fireproof, and then certified that he had installed the lower firewall in accordance with the manual requiring stainless steel rivets. Your Honor, there are numerous instances of intentional falsification in this case. It's sufficient, based on NTSB precedent and circuit precedent, that a single instance of intentional falsification warrants revocation of all that individual certificate. Here, Mr. Lawson's revocation of his mechanic certificate and his inspection authorization is warranted on this case. Where he's trying to work with the inspectors, why not something less than all-out revocation? Why not a suspension or something less than that? Your Honor, the FAA sanction guidance to which it strictly adheres indicates that where there's a single instance of intentional falsification, revocation is warranted because the individual lacks the necessary care, judgment, and responsibility to exercise all the privileges that have been granted to him under that certificate. In this case, where Mr. Lawson falsified records which are integral, that the FAA relies on being accurate, complete, and comprehensive, he falsified those records. The FAA relies on the cooperation of each airman in the system to ensure that those records are accurate. A mechanic who falsifies integral records of major alterations and repairs of an aircraft that are stored with the FAA for the life of the aircraft, and on which each subsequent aircraft owner relies, and any future mechanics performing work on the aircraft relies, nothing less than revocation is warranted, especially considering that there are numerous instances of falsification in this case. Your Honor, falsification in this case warrants revocation, and it cannot be said to be arbitrary and capricious, which is the Court's standard of review for the FAA sanction guidance. In addition, a revocation in this case, I should note, is only effective for a one-year period. It is not a lifetime revocation. So, given that Mr. Lawson's revocation took effect in December 9th of 2014, and that revocation period ended in 2015, if Mr. Lawson is so qualified, he is free to reapply. Your Honor, one additional fact I would like to point out here is Mr. Lawson claims that he was surprised that the inspectors did not speak to each other. That proves the point in this case, that the records are what the inspectors rely on. One inspector in one region may not necessarily be able to reach out to another inspector in one region. He may retire. He may not be available. The records should speak for themselves. Here, the ALJ found that the Form 337s and the aircraft maintenance records were plain on their face. Mr. Lawson himself demonstrated an apparent unwillingness to even consult the STC, and was evasive in his answers responding about his knowledge requiring him to comply with that STC. He also testified that he indicated he didn't even read the Form 337 before he performed the work, but that when he did, before he signed that Block 60 and Block 7, the conformity inspection and the return to service entry, that he had concerns about signing those documents. At that point, he had the opportunity to reach out to any inspector with whom he had previously worked with, and he chose not to do so. Your Honor, here where the Board has found numerous instances of intentional falsification, and a single one is sufficient for revocation, the sanction cannot be said to be arbitrary and capricious. Accordingly, unless this Court has further questions, I ask that the Court deny the petition for review, and affirm the NTSB's revocation of Mr. Lawson's mechanic certificate and his inspection authorization. Thank you, Your Honor. Please, the Court, the first issue I'd like to take up is a clarification on the 80-inch propeller issue. The Court can find this document, it's document 10, filed in February of this year, page 77, for future reference regarding the 80-inch propeller approval by the FAA for the 172 seaplane configuration. Secondly, counsel essentially confirmed what I had said earlier, that the 80-inch propeller wasn't put on at the time this aircraft was returned to service in December of 2014. It was put on at a later date, after the aircraft had been moved to the facility where the floats were going to be installed, because it was for a float configuration only. That's the only time that an 80-inch propeller is appropriate. And Mr. Lawson installed the propeller and told the customer, don't fly the aircraft until the floats are put on, so you're legal. And that's essentially been confirmed by opposing counsel. With regard to the falsification on the firewall, the falsification allegation comes from the fact that Mr. Lawson said he did the repair in accordance with the Cessna manual. He didn't say exactly what manual or what year the manual came out or anything, and he specifically didn't say, I installed aluminum rivets. He said he just did the work in accordance with the manual. It might be a different situation if he said, I installed stainless steel rivets, when he in fact installed aluminum rivets. But that wasn't what happened here. He just made a reference that he did it in accordance with the manual. Mr. Lawson contacted Cessna and verified that aluminum rivets were appropriate. Cessna said they're fine. And so he installed those rivets, and Mr. Bland, who's a former FAA inspector himself, said that if he was going to do that repair, he would use aluminum rivets. Not a big deal. But whether it's a big deal or not, if it's contrary to what he was authorized to do, and he falsifies a report, that's a violation, right? Exactly. That's the key point. What was he authorized to do? And he contacted Cessna and got authorization from Cessna to use those rivets. I mean, say FAA is wrong that, yeah, aluminum is as good as steel rivets, but the FAA is requiring the steel rivets. I mean, we don't second guess the FAA, do we? Well, the FAA doesn't actually require anything. The FAA requires that the manufacturer's specifications be deferred to. And the FAA doesn't set that standard. They allow the manufacturer to. And then they look at what the manufacturer has submitted, and then they approve it. The manufacturer in this case of Cessna said aluminum rivets are satisfactory. But they accepted, and if you look at the transcript, I think it's 79, they accepted that this required stainless steel rivets. That the manual that they were referencing required this, correct? That's what the manual said, yes. But those requirements can be altered by Cessna, and all it requires is a call to Cessna and say, is it okay? The FAA didn't alter that in this case, right? No one altered it. What the ALJ and then the board accepted was that this required steel rivets. The manual that was referred to required. The manual referred to in the documentation, right? Correct. The manual referred to stainless steel rivets. However, that can be altered by the manufacturer. Because they're the ones who put out that data. They're the ultimate authority on this issue. And the manufacturer said aluminum rivets are satisfactory. No one signed off on that change to aluminum rivets, correct? Has the manual been changed? Is that your question? The FAA did not approve aluminum rivets. Nor would they. Isn't the FAA the ultimate authority and not the manufacturer of the airplane? They will defer to the manufacturer. Well, they could, but if FAA requires something, the mechanic is required to follow the FAA rather than the manufacturer, isn't he? That would be unusual. Well, even if the FAA is wrong, the mechanic has to comply with the FAA, I thought. The FAA will usually say you need to follow manufacturer's recommendations. And if you look at the FAA's guidance on performing inspections or on time change items, they will say defer to the manufacturer's recommendations. Because the manufacturer is the one with the technical expertise. But even as it is, with that sign off, and counsel points to the Thunderbird case, which is a completely different case involving a propeller overhaul. In that case, the nuts used were a standard MS nut as opposed to the factory manufactured nut that had two different part numbers. And in that case, the mechanic said I used, and he listed the Hartzell part number, when in fact he used the generic MS part number. It's a totally different situation than what's involved here. This is strictly a sign off saying I did it in accordance with the manufacturers or in accordance with the manual. But Mr. Lawson went back and tried to get approval from Cessna, and did get approval, and tried to show that to the FAA that we have approval for this. They didn't want to look at it, they wanted their violation. They excluded it because you failed to get it certified as a business record. That's done all the time. They didn't have some other ulterior motive, they followed their own rules. They had no interest in finding out were these rivets acceptable by Cessna or not. That was not their intention. But with regard to the falsification, we're down to simply falsification on the annual inspection, which is typically not a falsification issue, it's just simply bad maintenance. And then the engine sign off, we've talked about the G versus K. The 337, the first one dealing with... I just wanted to say for these reasons, the falsification violation should be reversed, and the remaining should be dismissed for being stale. Thank you.